1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10  ANTHONY LINDSAY, JR.,           )      Case No. ED CV 04-1233-PJW
                                    )
11               Plaintiff,         )
                                    )
                                    )      MEMORANDUM OPINION AND ORDER
12               v.                 )
                                    )
13  JO ANNE B. BARNHART,            )
    COMMISSIONER OF THE SOCIAL      )
14  SECURITY ADMINISTRATION,        )
                                    )
15               Defendant.         )
    _____)

16

17                               I.

18                          INTRODUCTION

19       Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and

20  1383(c)(3), seeking reversal of the decision by Defendant Social

21  Security Administration ("Agency") denying Supplemental Security

22  Income ("SSI") and Disability Insurance Benefits ("DIB").

23  Alternatively, he asks the Court to remand the case to the Agency for

24  further proceedings.  After reviewing the record and for the reasons

25  discussed below, the decision of the Agency is AFFIRMED, and this

26  action is DISMISSED WITH PREJUDICE.

27

28

1

II.

2

BACKGROUND

3      Plaintiff was born on July 20, 1959, and was 43 years old at the

4  time of the administrative hearing.  (AR 147, 552.)  He has eleven

5  years of education and has past relevant work as an automobile

6  mechanic.  (AR 76, 81, 101, 111, 120.)

7      Plaintiff filed protectively for SSI on December 18, 2000 and

8  applied for DIB on August 6, 2001.  (AR 62, 65.)  In his applications,

9  Plaintiff alleged disability since June 13, 1989, because of low back

10  pain, a left foot deformity, bleeding ulcers, depression, and stress.

11  (AR 17, 158.)  After his applications were denied initially and on

12  reconsideration, he timely requested a hearing before an

13  administrative law judge ("ALJ").  (AR 47, 52, 57.)

14      The hearing was held on January 17, 2003.  (AR 552-61.)

15  Plaintiff appeared with counsel and testified.  (AR 555-60.)

16  Plaintiff testified that he was seeing a psychiatrist for depression,

17  stress, and poor concentration.  (AR 555).  He also claimed to have

18  suicidal tendencies, paranoia, auditory hallucinations, and tactile

19  hallucinations.  (*See* AR 555-57.)  Plaintiff's auditory hallucinations

20  manifested themselves as he was sleeping and sometimes led him to

21  conclude that people were "going to get me"; his tactile

22  hallucinations took the form of "something crawling on me."  (*See* AR

23  556-57.)  His concentration deficits prevented Plaintiff from

24  finishing the tasks he had started; because this would lead to

25  frustration, he would "try not to do things that'll get me

26  frustrated."  (AR 555-56.)  He attributed his depression to the death

27  of his mother--with whom he had lived for most of his life--four years

28

2

1    previously.  (*See* AR 555, 558.)  Plaintiff stated that he took

2    medication for his depression, and conceded that this medication

3    helped alleviate his symptoms.  (*See* AR 559-60.)

4         As to his lifestyle, Plaintiff claimed that he took his

5    medications every day, as prescribed.  (AR 560).  He also stated that

6    he no longer had a driver's license because "child support took" it

7    from him.  (*See* AR 560.)  Plaintiff admitted that he had been a hard

8    drinker until 2002, when his alcoholism landed him in the hospital on

9    the verge of kidney failure.  (*See* AR 558-59.)  Since that time,

10   Plaintiff claimed to drink only occasionally.  (*See* AR 558.)  He

11   denied ever having used illegal street drugs, and specifically denied

12   ever using cocaine, marijuana, or heroin.  (AR 559.)  The ALJ then

13   adjourned the hearing.  (AR 561.)

14        On February 28, 2003, after analyzing Plaintiff's claims under

15   the Agency's five-step sequential evaluation process, the ALJ issued

16   his decision.  (AR 16-27.)  At step one, the ALJ found no evidence

17   that Plaintiff had "engaged in substantial gainful activity since his

18   alleged onset date."  (AR 17.)  At step two, he concluded that

19   Plaintiff's combined impairments--which included "low back pain,

20   bleeding ulcers, abdominal pain, left foot pain, and mental problems"-

21   -were "severe" within the meaning of the regulations.[1]  (*See* AR 16.)

22        At step three, after observing that Plaintiff had introduced no

23   medical records predating June 1998, the ALJ found that Plaintiff's

24   limitations were not supported by "the appropriate clinical or

25

26        [1]  As to Plaintiff's claim for DIB, however, the ALJ concluded
     that he "does not have any impairment or impairments which
27   significantly limits his ability to perform basic work-related
     activities prior to September 30, 1994, the date he last met the
28   insured status requirements of the Act."  (AR 27.)

laboratory findings" and, thus, could not be considered severe enough to meet or medically equal a Listing.  (*See* AR 18.)  As the ALJ went on to explain, however, this did not end the step-three analysis:

> The undersigned finds that regardless of whether [Plaintiff's] impairments would meet the Listings, his alcohol and drug abuse would be disabling.  The record shows that [Plaintiff] has been diagnosed with polysubstance abuse; alcohol abuse; and alcohol-induced mood disorder.  Although [Plaintiff] testified during the hearing that he has not used alcohol for a year and has never abused drugs, this is clearly inconsistent with the record, which shows that he has a significant history of alcohol and drug abuse.  The record shows that [Plaintiff] has had legal problems, has worked only sporadically due to his alcohol and drug abuse, and has problems with regard to his ability to function and to socialize with others due to his alcohol and drug abuse.  As recently as October and November 2002, treating source records indicate [Plaintiff] was still using alcohol and marijuana; and had used cocaine in the recent past.  Thus, [Plaintiff's] recent claims that he has overcome his long-term substance abuse is not supported by the record.

(*See* AR 18 (citation to record omitted).)  On this record, the ALJ concluded that "considering only his alcohol and drug abuse, [Plaintiff] would be disabled."  (AR 19.)  After examining the medical evidence, however, the ALJ determined "that in the absence of alcohol

1   and drug abuse, [Plaintiff] can perform unskilled work, as defined in
2   the regulations, on a regular and sustained basis." (AR 23.)   Thus,
3   the ALJ proceeded to step four.

4        At step four, the ALJ began by noting that "[t]here has been no
5   suggestion that [Plaintiff's] symptoms have resulted in any
6   restriction in his ability to function." (AR 22.)   Bearing this in
7   mind, the ALJ assessed Plaintiff's residual functional capacity:

8        [I]n giving [Plaintiff] the benefit of every tenable doubt,
9        it is found that [Plaintiff] is limited to the performance
10       of medium work on a sustained basis.  Medium work includes
11       the ability to stand and/or walk, off and on, for a total of
12       approximately six hours out of an eight-hour workday, and
13       sit intermittently during the remaining time.  It also
14       requires an ability to lift 50 pounds occasionally and 25
15       pounds frequently and to frequently bend and stoop.
16   (*See* AR 22.)  Because Plaintiff's past relevant work as an automobile
17   mechanic required him to lift up to 100 pounds, the ALJ concluded that
18   he was unable to return to his past relevant work.  (*See* AR 24.)
19   Accordingly, the ALJ proceeded to step five of the sequential process.

20       Consulting the Medical-Vocational Guidelines (the "Grids"), the
21   ALJ made the step five determination that--given Plaintiff's residual
22   functional capacity--there existed approximately 2500 separate
23   unskilled occupations performed at the sedentary, light, or medium
24   level of exertion; the ALJ further found that each of these
25   occupations offered numerous jobs in the national economy.  (*See* AR
26   25).  Thus, the ALJ concluded that Plaintiff was not disabled within
27   the meaning of the regulations.  (*See* AR 25.)

28

                                    5

1    Plaintiff timely requested review of the ALJ's decision.  (AR 11-
2    12.)  The Appeals Council denied review, however, and the decision of
3    the ALJS became the final decision of the Agency.  (AR 5-7.)
4    Plaintiff then filed a Complaint in this Court, challenging the
5    Agency's decision denying him benefits.

6                                    III.

7                            STANDARD OF REVIEW

8        "Disability" under the applicable statute is defined as the
9    inability to perform any substantial gainful activity because of "any
10   medically determinable physical or mental impairment which can be
11   expected to result in death or which has lasted or can be expected to
12   last for a continuous period of not less than twelve months."  42
13   U.S.C. § 1382c(a)(3)(A).  The Court may overturn an ALJ's decision
14   that a claimant is not disabled only if the decision is not supported
15   by substantial evidence or is based on legal error.  *See Magallanes v.*
16   *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

17       Substantial evidence "'means such relevant evidence as a
18   reasonable mind might accept as adequate to support a conclusion.'"
19   *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison*
20   *Co. v. NLRB*, 305 U.S. 197, 229 (1938).)  It is "more than a mere
21   scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d
22   599, 601 (9th Cir. 1998), and "does not mean a large or considerable
23   amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

24       "The Court must uphold the ALJ's conclusion even if the evidence
25   in the record is susceptible to more than one rational
26   interpretation." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,
27   599 (9th Cir. 1999).  Indeed, if the record evidence can reasonably
28   support either affirming or reversing the Agency's decision, this

                                      6

1  Court must not substitute its judgment for that of the ALJ.  *See*

2  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the ALJ

3  committed error but the error was harmless, reversal is not required.

4  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th

5  Cir. 2003)(applying the harmless error standard).

6  IV.

7  DISCUSSION

8      Plaintiff claims that the ALJ erred by (1) giving insufficient

9  weight to the opinion of Plaintiff's treating physician (*see* Joint

10 Stip. at 5-7.); and by (2) ignoring a mental health assessment

11 completed by a social worker.  (*See* Joint Stip. at 3-4).  For the

12 reasons set forth below, neither ground warrants reversal of the ALJ's

13 decision.

14 A.  The ALJ's Assessment Of The Medical Evidence Is Supported By

15     Substantial Evidence

16     Plaintiff complains that the ALJ did not give proper weight to

17 the medical evidence.  In particular, Plaintiff complains that the ALJ

18 did not discuss the Global Assessment of Functioning ("GAF") score of

19 35 that Dr. Marissa Mejia, M.D., a treating psychiatrist, supposedly

20 assigned him in August 2001.[2]  Plaintiff also faults the ALJ for

21 failing to defer to Ms. Mejia's *failure to diagnose* him with a

22 substance abuse disorder, (*see* Joint Stip. at 7), and decries "[t]he

23

24 _____

25     [2]  The GAF score is used by clinicians to report an individual's
   overall level of functioning.  *See American Psychiatric Association,*
26 *Diagnostic & Statistical Manual of Mental Disorders* (Text Revision 4th
   ed. 2000) ("DSM-IV") at 32.  A GAF score of 31-40 indicates "[s]ome
27 impairment in reality testing or communication ... OR major impairment
   in several areas, such as work, school, family relations, judgment,
28 thinking or mood."  *See* DSM-IV at 34.

7

1  ALJ's failure to mention [Dr. Mejia's] opinion of disability." (*See*

2  Joint Stip. at 5-7.)  Insofar as these claims are predicated on a

3  misleading reading of the record, they must be rejected.

4      A treating physician's opinion on the nature and severity of an

5  impairment will be given controlling weight if it is "well-supported

6  by medically acceptable clinical and laboratory diagnostic techniques

7  and is not inconsistent with the other substantial evidence in [the]

8  case record."  20 C.F.R. § 416.927(d)(2).  The ALJS must offer

9  specific and legitimate reasons to reject the opinions of treating

10 physicians.  *See Lester* v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).

11 An ALJS need not, however, give controlling weight to the opinion of a

12 treating physician.  *See Batson*, 359 F.3d at 1194-95.  "Although a

13 treating physician's opinion generally is afforded the greatest weight

14 in disability cases, it is not binding on an ALJS with respect to the

15 existence of an impairment or the ultimate determination of

16 disability."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.

17 2001).  "The ALJS may disregard the treating physician's opinion

18 whether or not that opinion is contradicted," and "need not accept a

19 treating physician's opinion . . . with little in the way of clinical

20 findings . . . ."  *See Magallanes*, 881 F.2d at 751; *see also Johnson

21 v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)(noting that the ALJS

22 need not accept a treating physician's opinion that is brief,

23 conclusory, and unsubstantiated by objective medical evidence).

24      A review of the medical record confirms that Dr. Mejia treated

25 Plaintiff's mental impairments from August 2001 to October 2002.  (*See*

26 AR 412-19, 453-59.)  Although the ALJS did not mention Dr. Mejia by

27 name, he summarized her observations and conclusions--along with those

28 of a social worker on Dr. Mejia's staff--at considerable length:

8

Mental health records show [Plaintiff] was seen on August
20, 2001 with complaints of depression, auditor[y]
hallucinations, paranoid, and isolative behavior.
[Plaintiff] was consuming a six pack of beer a day, and he
last used drugs two days prior to his evaluation.  He was
diagnosed with major depression, recurrent, severe, with
psychotic features (provisional).  [Plaintiff] was seen on
September 13, 2001 and November 14, 2001, for renewal of
Zoloft and Zyprexa medications.  [He] returned on January 2,
2002, when he reported improvement with medication; however,
he continued to feel depressed and was still hearing voices.
Mental status examination revealed [he] had a depressed mood
[and] a brighter affect.  He was [calm], pleasant, coherent.
His medication was increased.  In February 2002
[Plaintiff's] mood was depressed.  He had appropriate
affect, and was calm and coherent.  He reported decreased
auditory hallucinations and no suicidal ideation.  [¶]
[Plaintiff] returned in June 2002, when he reported he had
been without medication for the past three months.  He
reported that when he uses his medication, he is able to
sleep well and has less depression.  In August 2002
[Plaintiff] reported that he continues to hear voices
several times a week.  He indicated that his depression had
improved.  Mental status examination revealed no evidence of
retardation or agitation, no abnormal movements, and
positive attitude.  Speech was coherent with normal
rate/volume.  His mood was positive and his affect was
appropriate.  Thoughts were logical and sequential.  His

1    medication dosage was increased.  The final record in

2    September 2002 indicated [that Plaintiff] feels that Zoloft

3    was helping.

4  (*See* AR 21 (citations to record omitted).)  The ALJ's summary of the

5  pertinent portions of Dr. Mejia's notes and conclusions was complete.

6       Plaintiff complains that the ALJS failed to notice that Dr. Mejia

7  had given him a GAF score of 35 on August 20, 2001.  (*See* Joint Stip.

8  at 5.)  Although the Agency appears to concede that Dr. Mejia did so,

9  (*see* Joint Stip. at 7), a careful reading of the medical record

10 indicates that neither Dr. Mejia nor any other *treating source* ever

11 opined that Plaintiff had a GAF of 35.  The GAF assessment to which

12 Plaintiff refers was not made by Dr. Mejia; rather, it was made by

13 "Jill M. Walker, M.S.W."  (*See* AR 415.)  Jill M. Walker, M.S.W., is

14 not a licensed or certified psychologist.  *See* 20 C.F.R.

15 §§ 404.1513(a), 416.913(a)(listing acceptable medical sources).  She

16 is a social worker.  Nor does the record show that Ms. Walker was

17 acting as the "agent" of any doctor when she performed the GAF

18 assessment on August 20, 2001.[3]  In these circumstances, although the

19

20        [3]  A social worker can be an "acceptable source" of medical
21  evidence only if she acts as an agent of a licensed physician or
    psychologist.  *See Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir.
22  1996).  This occurs where the social worker acts so "closely under the
    supervision" of the treating physician that the social worker's
23  opinion should be "properly considered as part of the opinion" of the
    treating physician.  *See id.* at 971.  Plaintiff does not contend, and
24  the evidence does not reflect, that Ms. Walker acted in such a
    capacity.  Indeed, the record reflects that Dr. Mejia did not see
25  Plaintiff until three weeks after Ms. Walker's GAF assessment, on
    September 23, 2001.  (*See* AR 415.)  The record further shows that--
26  whenever Dr. Mejia concurred with the diagnostic impressions or the
    treatment recommendations of a staff-member--her usual practice was to
27  write "I concur with above" and countersign.  (*See* AR 455.)  No such
    notation appears on Ms. Walker's notes.
28

1  regulations would have *permitted* the ALJS to consider Ms. Walker's

2  assessment, *see* 20 C.F.R. §§ 404.1527(d), 416.927(d), her opinion was

3  not entitled to any special deference.  *See Bunnell v. Sullivan*, 912

4  F.2d 1149, 1152 (9th Cir. 1990), *rev'd en banc on other grounds*, 947

5  F.2d 341 (9th Cir. 1991).

6      Plaintiff next complains that the ALJS did not defer to Dr.

7  Mejia's *failure to diagnose* any substance abuse disorder, (*see* AR 7),

8  an indirect attack on the ALJ's finding that Plaintiff's substance

9  abuse was material to his disability.  Under the controlling statute,

10  an individual cannot be found to be disabled "if alcoholism or drug

11  abuse would . . . be a contributing factor material to the

12  Commissioner's determination that the individual is disabled."  *See* 42

13  U.S.C. § 423(d)(2)(C).  Thus, if a claimant's disability is based, in

14  whole or in part, on alcoholism, benefits are denied.  *See id.*  This

15  means that the ALJS must determine whether a claimant's alcoholism is

16  a contributing factor material to the finding of disability.  *See* 20

17  C.F.R. § 416.935.  The deciding factor is whether the claimant would

18  still continue to have mental problems if he stopped using alcohol.

19  *See Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).  Once the

20  ALJS determines that alcohol abuse is a contributing factor material

21  to the finding of disability, the claimant has the burden of rebutting

22  that determination by presenting evidence as to whether his disability

23  would remain if he stopped using alcohol.  *See Ball v. Massanari*, 254

24  F.3d 817, 821 (9th Cir. 2001); *see also Sousa*, 143 F.3d at 1245.

25      Against this standard, it is clear that the ALJS was not required

26  to give Dr. Mejia's failure to diagnose Plaintiff's substance abuse

27  disorder any special weight.  For one thing, overwhelming evidence

28  confirmed that Plaintiff is, in fact, a chronic abuser of drugs and

11

alcohol.  The record is rife with evidence that Plaintiff is addicted
to hard liquor, beer, and as many as *five* illegal street drugs.  (*See*
AR 274-76 (noting Plaintiff's "long history of alcohol abuse"); 307
(recording Plaintiff's confession to using "[o]ne bottle of brandy and
a 12-pack of beer per day"); 374-75 (noting Plaintiff's December 2000
admission that he drank "large volumes" of malt liquor daily, used
cocaine "for one week straight" and had used marijuana within the
previous week, PCP within the last month, and methamphetamine within
the last two months); 367 (noting that Plaintiff had admitted to drug
abuse and "polysubstance abuse of ethanol, cocaine, and marijuana");
378 (memorializing Plaintiff's December 2000 admission that he had
used marijuana one week earlier, PCP one month earlier, and drank
alcohol twice monthly); 383 (recording Plaintiff's December 2000
admission that he "drinks alcoholic beverages on occasion"); 421
(noting Plaintiff's October 2001 admission that he "has a six-pack or
a twelve pack and some 'shots of liquor' at least three or four days a
week").)  In light of this evidence--which included Plaintiff's
confession to Ms. Walker that he "last smoked THC two days" before his
initial consultation on August 20, 2001 (*see* AR 416)--Dr. Mejia's
failure to make even a "rule-out" diagnosis made her impressions
inconsistent with the weight of the evidence, and perhaps even
aberrant.  *See Holohan v. Massanari*, 246 F. 3d 1195, 1202 (9th Cir.
2001)(noting that a treating source medical opinion that is
inconsistent with other substantial evidence in the record is not
entitled to controlling weight).  Moreover, to the extent that
Plaintiff's understatement of his addiction to Ms. Walker may have
lulled Dr. Mejia into believing that his drug addiction was not

chronic,[4] her opinions--which relied on second-hand recitations of Plaintiff's unreliable statements of his own condition--properly were not given controlling weight.[5]   Most importantly, Plaintiff has not pointed to any evidence that his drug and alcohol abuse were immaterial to a finding of disability.[6]

---

[4]   Plaintiff understated or even denied his drug and alcohol addictions on a number of occasions. (*See* AR 431 (memorializing Plaintiff's statement to an examining psychiatrist in October 2001 that he "never drank alcohol in his life"); *see also* AR 559 (recording Plaintiff's claim at the January 2003 hearing that he had *never* used cocaine, marijuana, or heroin).)

[5]   On this point, the Court notes that the ALJ offered a lengthy explanation of why he considered much of Plaintiff's testimony to be incredible. (*See* AR 24.)   Plaintiff has not challenged this adverse credibility determination. (*See generally* Joint Stip.)   Because "[c]redibility determinations are the province of the ALJ," *see Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989), this Court will not second-guess an unchallenged credibility finding.   *See Solomon v. Secretary of Health and Human Services*, No. 91-CV-77171 DT, 1992 WL 478766, at *2 (E.D. Mich. Aug. 13, 1992)("The Plaintiff has not challenged the ALJ's determination of her credibility, and the Court accepts it as accurate.").   This means that Plaintiff cannot show that the ALJ erred in declining to give controlling weight to the treating physician's opinion, "which was based in large part on [the claimant's] statements." *See Siska v. Barnhart*, No. C 00-4788 MMC, 2002 WL 31750220, at *3 (N.D. Cal. Dec. 4, 2002).

[6]   Indeed, the record reflects that Plaintiff's other claimed limitations were not disabling.   *See* AR 19-20 (ALJ's summary of the medical evidence); *see also* AR 210-13 (June 1999 report of internal medical examiner finding no physical limitations); 215-18 (January 2000 report of internal medical examiner finding no physical limitations); 219 (January 2000 radiology report finding no evidence of back injury); 220 (January 2000 consultative physician's report noting that Plaintiff's ulcer was relieved with Tagamet and Mylanta); 420-27 (October 2001 report of orthopedic examiner concluding that Plaintiff's claimed injuries to his lower back and left foot did not result in any functional limitations), 429-34 (October 2001 report of psychiatric examiner finding "evidence of exaggeration and possible manipulation during the interview" and finding no limitation as a result of Plaintiff's alleged mental impairments.)

13

1    Finally, Dr. Mejia did not render an "opinion of disability," as
2 Plaintiff contends. (*See* Joint Stip. at 7.)  The closest *anyone* came
3 to opining that Plaintiff was disabled was Ms. Walker, who believed
4 that Plaintiff suffered from "[s]evere depression recurrent[,] severe
5 with psychotic features." (*See* AR 415.)  Significantly, however, Dr.
6 Mejia did not adopt this diagnosis without qualification; instead, she
7 wrote the word "provisional" after it, and signed beneath that word.
8 (*See* AR 415.)  As Plaintiff continued seeing Dr. Mejia, she noted that
9 his symptoms improved when he took his prescription medication, but
10 worsened whenever he stopped taking his medicine.[7] (*See* AR 454-56.)
11 The ALJS duly noted this correlation when he summarized Plaintiff's
12 history of treatment with Dr. Mejia.  (*See* AR 21.)

13    In sum, a review of the voluminous medical record in this case
14 confirms that the ALJ's assessment of the treating source medical
15 evidence was both fair and complete.  For this reason, the Court
16 rejects Plaintiff's claim that the ALJS gave Dr. Mejia's opinions and
17 impressions short shrift.

18 B.   <u>The ALJ's Failure To Mention The Opinion Of A Social Worker Is</u>
19      <u>Not Reversible Error</u>

20    Plaintiff also argues that reversal is necessary because the ALJS
21 did not address the opinion of Jill Walker, the social worker who had
22 written treatment notes to the effect that Plaintiff suffered from

---

25 [7]  Dr. Mejia noted that Plaintiff's compliance with medication
   was never better than "fair," (*see* AR 412, 454-55, 459), and
26 occasionally was much worse than that. (*See* AR 456 (noting
   Plaintiff's "fair to poor" compliance with his prescription medication
27 regimen and recording his admission that he had "been without meds for
   past three months"); *see also* AR 453, 457 (recording Plaintiff had
28 been a "no show" for his monthly appointments).)

14

1    "severe" depression on August 20, 2001.  (*See* Joint Stip. at 3-4.)

2    For reasons similar to those set forth above, the Court concludes that

3    this claim lacks merit.

4         Generally, Plaintiff contends that "it does not appear that the

5    ALJ considered [Ms. Walker's opinion]."  (*See* Joint Stip. at 4.)  As

6    the foregoing discussion of the GAF score that the parties erroneously

7    attribute to Dr. Mejia indicates, however, it is clear that the ALJ

8    *did* consider Ms. Walker's impressions; indeed, he cited and summarized

9    the documentation of Ms. Walker's consultation with Plaintiff on

10   August 20, 2001.  (*See* AR 21, 414-19.)  Accordingly, a review of the

11   record confirms that the ALJ did "consider[] all of the medical

12   evidence," as he noted in his decision.  (*See* AR 24.)

13        More concretely, Plaintiff complains that the ALJ "did not

14   explain his apparent discounting" of Ms. Walker's impressions.  (*See*

15   Joint Stip. at 4.)  Again, social workers like Ms. Walker are not

16   medical sources within the meaning of the regulations.  *See* 20 C.F.R.

17   §§ 404.1513(a), 416.913(a).  Because the opinions of social workers

18   are not afforded any particular deference, "there is no requirement

19   that the Commissioner accept or specifically refute such evidence."

20   *Bunnell*, 912 F.2d at 1152.  Thus, the ALJ need not have specifically

21   explained what weight--if any--he gave Ms. Walker's impressions.

22        Finally, even if the ALJ should have addressed Ms. Walker's

23   assessment that Plaintiff was "severely depressed, has A/H, paranoia,

24   unable to acquire a job, has no friends, [and] isolates" with greater

25   specificity, (*see* Joint Stip. at 3), any error was harmless in this

26   case.  The ALJ specifically addressed other evidence in the record

27   that, without prescription medication, Plaintiff suffered from severe

28   depression and auditory hallucinations.  (*See* AR 20-21.)  Insofar as

Ms. Walker's observations were based almost entirely on self-reported symptoms from a claimant whose testimony the ALJS found unreliable, (*see* AR 24), her opinions--including her GAF assessment--were not especially probative of Plaintiff's condition.  *See Street,* 2005 WL 2317980 (noting that the ALJS properly rejected a GAF assessment of 35 where the claimant had understated his alcoholism).  Thus, the ALJ's terse handling of Ms. Walker's notes appears to have been justified by and subsumed within his adverse credibility determination.[8]  *See Siska*, 2002 WL 31750220 at *3.  The ALJS need not have addressed Ms. Walker's statement that Plaintiff was "unable to acquire a job," (*see* AR 419), because it was immaterial to the question of his disability.[9]  Even if the ALJS should have delved more deeply into this social worker's August 20, 2001 consultation notes, his failure to do so was harmless in the circumstances.  *See Batson*, 359 F.3d at 1197.

In the final analysis, Plaintiff has not demonstrated that the ALJS erred in analyzing the medical evidence.  For that reason, he is not entitled to relief.

---

[8]  For example, Plaintiff's statement to Ms. Walker to the effect that he "has no friends," (*see* AR 419), appears to be belied by his admissions elsewhere in the record "that he has several friends." (*See* AR 274.)  Additionally, at least one physician found Plaintiff's claim that he suffered from auditory hallucinations to be "highly unlikely and not very credible."  (*See* AR 432.)

[9]  Obstacles to *finding* work--as opposed to a medical disability that prevents a claimant from *performing* it--do not warrant SSI benefits.  *See* 20 C.F.R. § 220.131(c)(noting that a claimant is not disabled if she retains the residual functional capacity and vocational abilities to do work which exists in the national economy but remains unemployed because of "her inability to get work").

16

1                                    V.

2                             CONCLUSION

3        For all the foregoing reasons, the Court concludes that the

4   Agency's decision is free from material error.   Accordingly, this case

5   is dismissed with prejudice.

6

7        IT IS SO ORDERED.

8

9        DATED:      November __14__, 2005.

10

11                                      /s/
                                _____
12                              PATRICK J. WALSH
                                UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   S:\PJW\Cases-Soc Sec\LINDSAY, A 1233\Memo Opinion.wpd

                                    17